## STATE v. THOMPSON.

No. 3630. Decided June 18, 1921. (199 Pac. 161.)

1. CRIMINAL LAW—SUFFICIENCY OF PLEADING ON DEMURRER SHOULD BE DETERMINED IN VIEW OF FACTS ALLEGED. When the sufficiency of a pleading, as that of plea of former jeopardy, is challenged by demurrer, the facts alleged in the pleading and those only constitute the standard whereby its sufficiency should be determined.

2. CRIMINAL LAW—WHEN DEFENDANT IN "JEOPARDY" STATED. Defendant is in "jeopardy" when the jury is impaneled and sworn and the issues presented on a valid indictment or information in a court of competent jurisdiction.

3. CRIMINAL LAW—PLEA OF FORMER JEOPARDY GOOD. In a prosecution for indecent assault, defendant's plea of once in jeopardy, alleging among other things that the jury was discharged without his consent, and that there was no special necessity therefor, held a good plea, invulnerable to the state's demurrer.

4. CRIMINAL LAW—COURT HAS NOT RIGHT TO DECLARE MISTRIAL AND DISCHARGE JURY FOR MISCONDUCT OF JUROR. Merely because a juror has conducted himself in such a manner as to entitle a party to a new trial at his own instance, it does not follow that the trial court has the right, of his own motion, when the misconduct becomes known, to declare a mistrial and discharge the jury.

5. CRIMINAL LAW—COURT SHOULD HAVE SUSTAINED STATE'S MOTION TO STRIKE PLEA OF FORMER JEOPARDY WHEN CERTAIN AS TO CONSENT OF COUNSEL TO PRIOR DISCHARGE OF JURY. If the court was absolutely certain that the statements of defendant's counsel amounted to an unqualified consent to previous order discharging the jury for misconduct of a juror in receiving communications from a bystander, the court should have sustained the state's motion to strike defendant's plea of former jeopardy on account of such prior discharge.

6. CRIMINAL LAW—WHETHER DEFENDANT CONSENTED TO PRIOR ORDER DECLARING MISTRIAL A JURY QUESTION. In a prosecution for indecent assault, wherein defendant filed plea of former jeopardy, whether defendant consented to the prior order declaring a mistrial and discharging the jury for misconduct of a juror held for the jury under the evidence.

7. CRIMINAL LAW—RULING RESTRICTING INQUIRY AS TO DEFEND-

ANT'S REPUTATION TO PARTICULAR TRAIT IN ISSUE NOT PREJUDI-
CIAL. In 'a prosecution for indecent assault, where defendant's
counsel asked a witness concerning defendant's general repu-
tation, with special reference to his personal morality, and on
the state's objection the court required that the inquiry be' re-
stricted to the particular trait of sexual morality, and the
witness answered that the defendant's reputation in such re-
spect was good, the ruling of the court was not prejudicial to
defendant.

8.  CRIMINAL LAW—TESTIMONY OF CHARACTER WITNESS PROPERLY
RESTRICTED TO TRAIT INVOLVED. In a prosecution for crime, de-
fendant's character witness is properly permitted to testify only
to defendant's reputation in respect to the trait of character
involved in the particular charge, as of sexual morality on a
charge of indecent assault.

Appeal from District Court, Third' District, Salt Lake
County; *H. M. Stephens,* Judge.

C. C. Thompson was convicted of indecent assault, and he
appeals.

REVERSED, and cause remanded.

*H. V. Van Pelt* and *King & Schulder,* all of Salt Lake
Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal Farr,* Asst. Atty.
Gen., for the State.

THURMAN, J.

The defendant was convicted in the district court of Salt
Lake county of the crime of indecent assault, as defined in
Comp. Laws Utah 1917, § 8049, and sentenced to a term
of imprisonment in the state prison.    No exception was
taken to the information.    Defendant was arraigned thereon,
and pleaded not guilty.    A jury was regularly impaneled
and sworn to try the cause.    After several days devoted to
the taking of testimony, information was conveyed to the

presiding judge by one of the jurors sworn in the case to the effect that he had been communicated with concerning the case by a person not connected therewith. The judge immediately brought the matter to the attention of counsel for the respective parties, and after an investigation of the matter, the court ordered a mistrial, and discharged the jury. Specific details as to what occurred in the investigation will appear later on.

At the next term of court, the case again came on for trial on the same information, whereupon the defendant entered the following plea:

"Now comes C. C. Thompson, defendant, in his own proper person, into court here, and, having heard the information read, says that the state of Utah ought not further to prosecute said information against him, because at the September, 1919, term of the district court of the Third judicial district in and for the county of Salt Lake, the district attorney of said district, duly authorized by law so to do, presented defendant the aforesaid information against him for the same offense with which the defendant is now charged; that said defendant was duly arraigned in said court on said information, and pleaded not guilty thereto; that thereupon a jury was duly impaneled and sworn in said cause in said court, and the trial proceeded with and testimony taken on the part of the state and on part of the defendant, when said jury were discharged by the court upon the ground that the jury had received out of court, after being so duly impaneled, and after said trial had been proceeded with, evidence other than that resulting from a view of the premises and a communication referring to said case, which discharge was without the consent of the defendant, and before agreement upon a verdict, and without disagreeing, and without special necessity for such discharge, and the said defendant says that he has been once in jeopardy upon the said information, and cannot under the Constitution and by the laws of the state of Utah, be again tried under said information, or for the offense therein set out. Wherefore the defendant prays judgment of the court that he may be dismissed and discharged."

To this plea the state interposed an oral demurrer, and also a motion to strike. The motion to strike was denied, but the demurrer was sustained. The specific grounds of the demurrer do not appear in the record, but we are justified in assuming that the contention was that the facts stated were insufficient to constitute a plea of "once in jeo-

pardy.'' The defendant excepted to the ruling of the court sustaining the demurrer. The trial of the case thereafter proceeded, resulting in a conviction, as before stated. Judgment was entered thereon, from which judgment defendant appeals.

1. Appellant assigns as error the ruling of the court sustaining the demurrer to his plea of "once in jeopardy.'' We have felt somewhat embarrassed in our endeavor to determine this question because of the peculiar angle from which the question appears to have been considered by counsel on both sides of the controversy.

When the sufficiency of a pleading is challenged by demurrer, the facts alleged in the pleading, and those only, constitute the standard by which its sufficiency should be determined. If we are right in our interpretation of the record in the present case, evidence of what occurred in court before the plea in bar was entered during the investigation heretofore referred to, was offered and received upon the question as to whether or not the plea was justified, and the evidence so taken must have been considered by the court in determining the question raised by the demurrer. We feel warranted in indulging in this assumption, for otherwise we do not understand upon what theory the demurrer could have been sustained. The demurrer admits the facts alleged in the plea. The facts pleaded clearly show that at a previous term of the same court the defendant was duly arraigned on the same information, on which arraignment he pleaded not guilty; that a jury was duly impaneled and sworn in said court and cause, and testimony taken on the part of both the state and the defendant; that said jury was discharged by the court on the ground that, after being duly impaneled and after the trial had commenced, the jury had received, out of court, evidence other than that resulting from a view of the premises and a communication referring to said cause; that the discharge of said jury was without the consent of defendant, and without "special necessity,'' and before an agreement upon a verdict or disagreement thereon. The plea expressly alleges that the defendant

had been once in jeopardy upon the same information. Defendant invokes the Constitution and laws of the state against being tried again for the same offense, and prays that he be discharged.

The most serious objection to the plea is that it abounds in superfluity and excessive verbiage. Comp. Laws Utah 1917, § 8899, subd. 4, provides the form of a plea of "once in jeopardy":

"If he pleads once in jeopardy: 'The defendant pleads that he has been once in jeopardy for the offense charged (specifying the time, place and court.)'"

All of this the defendant pleaded, and much more. The question is, Did he plead himself out of court by alleging facts which nullified the effect intended? If not, the superfluous matter should have been disregarded and the plea sustained.

There is no disagreement between counsel for the defendant and the state concerning the proposition as to when jeopardy attaches in a case where the jury is impaneled to try the cause. The defendant is in jeopardy when the jury is impaneled and sworn and the issues presented on a valid indictment or information in a court of competent jurisdiction. The doctrine is tersely stated by the Supreme Court of California in *People* v. *Webb,* 38 Cal. 467. The third headnote reads:

"If a party is once placed upon his trial before a competent court and jury, upon a valid indictment, the 'jeopardy' attaches, to which he cannot be again subjected, unless the jury be discharged from rendering a verdict by a legal necessity, or by his consent; or, in case a verdict is rendered, if it be set aside at his instance."

To the same effect is *People* v. *Horn,* 70 Cal. 17, 11 Pac. 470. This statement of the proposition is almost a perfect model of brevity and conciseness.

Defendant's plea of "once in jeopardy" in the instant case alleges, among other things, that the jury was discharged without his consent, and that there was no "special necessity" therefor. These, together with the other matters alleged, constitute a good plea of "once in jeopardy."

It follows, therefore, that the state's demurrer to the

defendant's plea should have been overruled. But
whether or not the error of the court in sustaining the de-
murrer was one of which defendant can complain is a sub-
ject of serious controversy between the parties.

Comp. Laws Utah 1917, § 8924, provides that issues of
fact arise, (1) upon a plea of not guilty; (2) upon a plea
of former conviction or acquittal; (3) upon a plea of once in
jeopardy. The next succeeding section provides that issues
of fact must be tried by a jury unless a trial by jury be
waived as therein provided. If the circumstances consti-
tuting the basis of defendant's plea of "once in jeopardy"
involve issues of fact, then such issues should have been
tried by the jury. If the circumstances relied on by defend-
ant present only issues of law, then it was the duty of
the court to try such issues, and, if properly determined
against the defendant, the error of the court in sustaining
the demurrer to the plea would be harmless.

In order to determine whether or not there was an issue
of fact which should have been submitted to the jury, it
becomes necessary at this point to state the circumstances
upon which defendant relies for the basis of his plea. It is
not necessary to mention the names of persons involved, ex-
cept those of counsel participating in the investigation.

After the first trial, as heretofore stated, had proceeded
for several days, one of the jurors sworn in the case informed
the presiding judge that he had ben approached by a gentle-
man with whom he was acquainted and was asked by him,
"Who is on trial in this court?" The gentleman then looked
and saw, the defendant, and said. "Oh! Thompson is on
trial." The juror made no reply. The gentleman then said,
"I think a charge of this kind is a great shame." The
juror said "Yes, if a man is guilty it is a shame, and if he
is innocent it is a shame for him to be charged with that
crime." The gentleman then said, in effect, that he had
known the defendant casually for many years, and in his
opinion the prosecution was a matter of prejudicial spite.
The juror answered that as to that he had no opinion. Feel-
ing that it was his duty, the juror reported the matter to

the judge, who at once called it to the attention of opposing counsel, and, after stating to them what the juror had told him, the judge, in substance, said he had considered the matter and was inclined to think he should declare a mistrial, notwithstanding the public expense. He said he saw no escape from that duty, and would call the juror, in the absence of the other jurors, and place on record what the juror had communicated to him. At this point Mr. Van Pelt, one of the attorneys for the defendant, propounded an inquiry as to whether it was agreed that it was probably a matter the defendant coud not waive. The court said he was not certain as to that, but that the court would not require the defendant to waive it if the matter was in the discretion of the court. The juror was then called to the witness stand, and testified substantially as above set forth. The juror also stated he had not communicated the matter to any one else. In reply to a question by Mr. Van Pelt, the juror stated he did not think the communication would have the slightest bearing whatever upon him. He had previously stated to the court that he would not permit it to influence his judgment. Mr. Robertson, an attorney for the state, suggested that if any bias or prejudice had been created it was against the state, and in favor of defendant. The court stated he had given consideration to that feature, but that in such case the effect was so speculative the court had no right, either as against the state or as against the defendant, to take any chance whatever of an unfair verdict where the particular basis of the unfairness could not be arrived at. Mr. Robertson then stated that as far as the state was concerned he would like the record to show that no point whatever was made of the matter, and he would not ask for an order of mistrial; that he was willing to rely on the integrity of the juror, and all the jurors, and suggested that if the defendant consented to proceeding with the trial it might be error which the defendant could attack if a mistrial was ordered. The court expressed regret at the necessity of repeating the trial; that the public expense was great; the inconvenience to the witnesses was great, and the time of the court

crowded; but, as the court saw the law, there was no alternative, even in the face of the public expense and the inconvenience to the parties and the court. The court further stated that the matter struck at the very foundation of justice, and asked if counsel wished to be heard. Mr. Sonnedecker, one of defendant's counsel, said he thought he thoroughly agreed with the court. After some further statements by the juror and the court, not material to be stated here, Mr. Sonnedecker expressed appreciation for what the juror had done, and said he did not think there was any unfairness; that personally he thought it was a question of whether or not the communication was received. After which the court declared a mistrial and discharged the jury.

The foregoing is the substance of what occurred in the investigation. The state contends, as matter of law, that the defendant consented to the order declaring a mistrial and discharging the jury. The defendant insists that no consent was given. The question to be determined is, Could the court assume as matter of law that the defendant consented to the order declaring a mistrial and discharging the jury? If it could then, notwithstanding the error of the court in sustaining the demurrer to defendant's plea, the defendant would have no grounds of complaint.

Before proceeding to consider this question in detail, there is another question that should be disposed of, for, if the court, under the circumstances, as matter of law, had the right to order a mistrial and discharge the jury on the grounds of legal necessity, then it could do so without defendant's consent, and the question as to whether or not the defendant consented would be immaterial.

Counsel for the state take the position that the circumstances were such that it was within the discretion of the court to declare a mistrial even though defendant did not consent. In this connection they cite numerous cases, not controverted here, tending to show that receiving evidence or communications by a juror out of court is grounds for a new trial. They contend that any conduct on the part of a juror that is grounds for a new trial is likewise sufficient

to justify the court in declaring a mistrial and discharging the jury.

One or two observations, in our opinion, is all that is necessary to show the fallacy of this position. If a juror receives evidence out of court, or a communication such as was made in the instant case, and the fact was not known to the party prejudiced thereby until after the verdict was rendered, it would undoubtedly be grounds for a new trial at the instance of the party prejudiced. But suppose the misconduct or irregularity was well known to the party during the progress of the trial, and he failed to call the matter to the attention of the court, or otherwise make seasonable complaint, would such party be entitled to a new trial? In 29 Cyc., at page 813, the author says:

"Misconduct of jurors, *or of other persons affecting jurors,* is not ordinarily ground for a new trial if the unsuccessful party, having knowledge of the misconduct before the verdict, failed to call the attention of the court thereto or ask proper relief." (Italics ours.)

See, also, 20 Standard Ency. Procedure, 465.

As to this question, we believe there is no disagreement among the authorities. The fact that it is a matter which the party can waive is conclusive of the proposition that such misconduct does not ipso facto vitiate the verdict. Hence it cannot be successfully contended that, because a juror has conducted himself in such manner as to entitle a party to a new trial at his own instance, therefore the trial court has the right, of his own motion, when the misconduct becomes known, to declare a mistrial and discharge the jury. Counsel for the state have cited no authority in support of their contention, and in our opinion none can be found.

Let us now consider the proposition from another point of view. Take the facts and circumstances of the instant case. Suppose that both the state and the defendant, after having been informed of the episode related by the juror, had expressly waived their rights to object and consented to proceed with the trial; and suppose, notwithstanding such

waiver, the court had ordered a mistrial and discharged the jury; can there be any doubt in such case that on a subsequent trial the defendant would have the right to enter a plea of once in jeopardy? We think not; and furthermore we are of the opinion that the order of a trial court sustaining such a plea would be upheld by the court of last resort in practically every state in the Union. If our position is correct it cannot be true that there was a legal necessity for the court, on his own motion, declaring a mistrial and discharging the jury. Nor did the court have the power to do so.

This brings us back to the main question: Can it be said as a matter of law that the defendant consented to the order declaring a mistrial and discharging the jury? If there was any doubt as to whether or not defendant did consent, the matter, under proper instructions, should have been submitted to the jury.

It is fairly inferable from what the trial court said to counsel when it called the matter to their attention at the time of the investigation referred to that the court had made up its mind to order a mistrial. The calling in of the juror was merely to make a record. Mr. Van Pelt's inquiry as to whether they were all agreed that it was a matter defendant could not waive could not be construed as consent. The court's response, in effect, that he would not require defendant to waive it, if the matter was within the discretion of the court, throws no light on the question of consent. Mr. Van Pelt's inquiry of the juror as to whether he could, notwithstanding the communication he had received, act with impartiality and disregard the communication, would seem to indicate a desire on his part that the trial of the case should proceed. Mr. Robertson, the state's attorney, expressly waived objection on the part of the state, and indicated a desire to proceed with the trial. In fact he suggested that an order declaring a mistrial might be a fatal error if the defendant was willing to proceed with the trial. The court expressed regret at the necessity of repeating the trial. It referred to the great expense, to the great in-

convenience to witnesses, and to the fact that its calendar was overcrowded, but stated that as the court saw the law there was no alternative; that it was a matter which struck at the very foundation of justice. . The court then asked counsel for defendant if they wished to be heard. Mr. Sonnedecker, one of defendant's counsel, said he thought he thoroughly agreed with the court. After some further colloquy between the court and the juror, Mr. Sonnedecker expressed appreciation for what the juror had done, and said he did not think there was any unfairness; that, personally, he thought it was a question of whether or not the communication was received. The court, as before stated, ordered a mistrial and discharged the jury.

When Mr. Sonnedecker said he did not think there was any unfairness, it is uncertain whether he referred to the conduct of the juror or to the conduct of the court. If the court had been absolutely certain that the statements of defendant's counsel amounted to an unqualified consent to the order discharging the jury, it ought to have sustained the motion to strike. The plea alleging that no consent was given was entirely inconsistent with and repugnant to the record made at the investigation, if such record, as contended by the state, conclusively shows that defendant gave consent. In other words, the plea in such case, though good in form, was false in fact—a mere sham—and should have been stricken.

Upon the whole record, as made at the investigation, we cannot say as matter of law that defendant consented to the order declaring a mistrial and discharging the jury. We think, under all the circumstances, the plea of once in jeopardy should have been submitted to the jury under proper instructions of the court.

As this case must be remanded for a new trial, it is necessary to dispose of one other question presented in the assignments of error. During the course of the trial defendant's counsel asked a witness for defendant concerning defendant's general reputation in the community as a law-abiding man, with special reference to his "personal moral-

ity prior to the transaction alleged in the information. The state objected, on the ground that the question was too general; that the inquiry should be restricted to the particular trait in issue, or sexual morality. The court took that view of the question and sustained the objection. The witness was then permitted to testify that the defendant's general reputation at the time inquired of as a law-abiding citizen, having special reference to sexual morality, was good. Other witnesses testified to the same effect, and none testified to the contrary. It is difficult to see wherein the defendant was prejudiced by the ruling of the court. The defendant's character for morality was conclusively presumed to be good in every respect, except as to the particular trait involved in the information. The information, and the evidence offered in support thereof, put the character of the defendant as to his sexual morality in issue to the extent that evidence on his behalf of his general reputation in that regard became relevant and material to the issue thus raised.

We are of the opinion that the contention made by the state and sustained by the trial court is well 7, 8 supported, both by reason and the great weight of authority. Underhill on Evidence (2d Ed.) § 77, states the rule as follows:

"In a criminal prosecution, evidence of accused's general good character is admissible only when limited to the particular trait involved in the nature of the charge. Traits of character which may be proved depend upon the nature of the crime alleged and the moral wrong which is involved in its commission."

In 3 Ency. of Ev., at page 20, the author says:

"According to the doctrine which obtains in most jurisdictions, the evidence of good character offered by the defendant in a criminal prosecution must be limited to the particular trait of character involved in the commission of the crime charged."

To the same effect, see Wharton, Crim. Evid. (10th Ed.) vol. 1, p. 1007; Bishop, New Crim. Proc. § 1113; 10 R. C. L. p. 952.

Many cases in support of this rule are referred to in the brief of counsel for the state. The foregoing are sufficient to illustrate the general rule. This doctrine, however, is not

of universal acceptance. Some of the authorities above cited state the opposite view in connection with the general rule. Other cases are cited by defendant. *Jones* v. *State,* 10 Tex. App. 552; *Lincecum* v. *State,* 29 Tex. App. 328, 15 S. W. 818, 25 Am. St. Rep. 727; *Poyner* v. *State* (Tex. Cr. App.) 48 S. W. 516; *Hardtke* v. *State,* 67 Wis. 552, 30 N. W. 723.

The writer confesses his inability to see why the defend-ant-should assume the burden of proving his general repu-tation for "personal" morality in every respect instead of restricting his proof to morality in the only particular in which it is challenged by the state. The question pro-pounded by defendant's counsel would have subjected the witness to the fire of cross-examination by opposing counsel as to every possible phase of "personal" morality—virtue, honesty, integrity, righteousness, temperance, sobriety, and square dealing between man and man. Defendant's counsel must have been sure of the unimpeachability of their client's character, otherwise they would not have incurred the haz-ard. In any event we have no reasonable doubt as to the correctness of the rule enunciated by the trial court.

Numerous other errors are assigned by defendant, but in our opinion they are without merit.

For the reasons stated the judgment of the trial court is reversed, and the cause remanded for a new trial.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.