**Derric MORRISON, Appellant,**

v.

**STATE OF MISSOURI; Richard J. Mehan, Appellees.**

No. 91–1317.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1991.

Decided Oct. 9, 1991.

Rehearing and Rehearing En Banc Denied Dec. 9, 1991.

Thomas J. Cotter, St. Louis, Mo., argued (Norman S. London, on brief), for appellant.

George Peach, St. Louis, Mo., argued (Dee Joyce–Hayes, on brief), for appellees.

Before JOHN R. GIBSON, FAGG and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Derric Morrison appeals from a district court[1] order denying his writ for habeas corpus under 28 U.S.C. § 2254 (1988). Morrison had been charged in Missouri state court with sexual offenses relating to three children. After two days of trial, the state announced that it had located a videotaped interview with one of the children. The court granted Morrison's motion for a mistrial the next day, but subsequently denied Morrison's motion to dismiss the indictment. After exhausting his state remedies, Morrison filed this habeas corpus petition to prevent retrial on the same charges on double jeopardy grounds. We are convinced that Morrison has not shown that the prosecutor's conduct was intended to provoke him into moving for a mistrial as required by *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), and therefore, affirm the denial of the writ.

On June 5, 1989, Morrison's trial began in the St. Louis City Court on sexual offense charges involving three children. Before trial, Morrison's attorney made substantial efforts to obtain transcripts of any videotaped interviews with any of Morrison's alleged victims. On May 23, 1988, Morrison's counsel filed a motion to compel discovery of such materials. The court sustained Morrison's motion. The prosecutor told Morrison's attorney that a videotaped statement of one of the victims, N.M., was made on June 14, 1988. There was correspondence between counsel about this videotape, and on July 20, 1988, Morrison's attorney filed a motion to dismiss the indictment based on the prosecutor's failure to provide the videotape. On September 14, 1988, the prosecutor filed a memo with the court stating that all videotapes and transcripts of videotaped interviews had been provided to the defense. Morrison's attorney continued to try to obtain a transcript of an interview with N.M. In November 1988, after a conference, the court ordered the state to produce "any and all complete or partial videotapes made

and known to the State" of two of the victims, or to show by sworn affidavit that there were no such videotapes. The prosecutor then filed an affidavit stating "I have turned over to the defendant all video tapes made or attempted to be made of the victims … and … no further tapes of any of said victims exist anywhere to my knowledge." On March 22, 1989, during the deposition of a potential state witness, the prosecutor again stated on the record that there was not a videotaped interview of N.M.

Morrison's trial began on June 5, 1989. That night, Morrison's attorney went to the Cardinal Glennon Hospital and watched a 35–minute videotaped interview of N.M. The next day, a nurse from the hospital tried to contact the prosecutor to tell her that Morrison's attorney knew of the videotape and had seen it. On June 7, the nurse came to the courthouse and told the prosecutor of the defense's discovery. The prosecutor then advised Judge John Chancellor, the Missouri Circuit Court Judge who was conducting the trial, that she had just learned that there was a videotaped interview with N.M.

The court granted Morrison's motion for a mistrial the following day. Thereafter, Morrison moved to dismiss the indictment on double jeopardy grounds. Judge Chancellor held a three-day evidentiary hearing. The judge stated:

> This Court finds that [the prosecutor] had knowledge of the tape from the time that it was made. She knew or could have known of the contents thereof. She had reason to believe that these contents, if known, were in no way helpful to the State and, therefore, of no advantage to disclose.

*Missouri v. Morrison*, No. 871–3224, slip op. at 33 (Cir.Ct.St.L. Oct. 13, 1989).

Judge Chancellor also termed the prosecutor's story "inconceivable," "incredible," and "unworthy of any belief" and said that her conduct was "reprehensible." *Id.* at 26, 28, 29, and 39. He found that she filed an affidavit that "was without any foundation in fact and was fraudulent *ab initio*."

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

*Id.* at 29. Nevertheless, the court denied Morrison's motion to dismiss because it could not conclude the prosecutor's conduct was intended to provoke a mistrial. *Id.* at 39–41 (citing *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982)).

Following unsuccessful state court appeals, Morrison filed a habeas corpus petition in district court. The case was referred to a magistrate judge for report and recommendation under 28 U.S.C. § 636(b). After holding a hearing, the magistrate judge filed a report which contained findings incorporating some of the facts that we have set forth above, and also the transcript of the colloquy between Judge Chancellor and Morrison's attorney when the videotape was brought to the court's attention. At that time, Judge Chancellor told Morrison's attorney to "be careful" before asking for a mistrial because if he asked for one he would get it, but that the court would not order a dismissal of charges. *Morrison v. Missouri,* No. 90–830C(3), slip op. at 5, 7 (E.D.Mo. Aug. 1, 1990).

The magistrate judge denied the writ, holding that the motion for a mistrial did not meet the requirements of *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Slip op. at 9–10 (Aug. 1, 1990). The magistrate judge concluded that the state trial court findings were fairly supported by the record, and thus, presumed to be correct under 28 U.S.C. § 2254(d). *Id.* at 9. The magistrate judge relied on Judge Chancellor's finding that the prosecutor did not intend to provoke a mistrial. *Id.* The district court adopted the magistrate judge's report and recommendation, and dismissed the petition. *Morrison v. Missouri,* No. 90–0830–C(3), slip op. at 4 (E.D.Mo. Dec. 31, 1990).

Because the state trial judge's findings, as stated by the magistrate judge and district judge, are fairly supported by the record and are presumed to be correct under 28 U.S.C. § 2254(d), we set forth some of those findings:

On the morning of June 7, 1989, the State requested a conference in chambers. At that time the State announced that it had just learned that a videotape

of [N.M.] had, in fact, been made, but that the defense was aware of the tape, and that the tape was helpful to the defendant. After a full discussion of the background and history of the discovery problems, particularly with respect to the existence of the instant videotape, the Court advised [Morrison's attorney] that if a mistrial was the relief he was requesting, that relief would be granted. At the same time the Court apprised [Morrison's attorney] that his request for a dismissal of all the charges would be denied. In doing this, it was the Court's intention to let [Morrison's attorney] know that he was not going to request a mistrial just for the purpose of making a record. The Court was sufficiently apprised of the gravity of the situation to know that the granting of a mistrial was appropriate relief if requested by the defendant. [Morrison's attorney] asked for 24 hours to think it over. The trial proceeded on June 7, 1989.

On the following morning, June 8, 1989, [Morrison's attorney] advised the Court that he had discussed the matter with his client and that they felt that a mistrial should be requested in view of the disclosure of the videotape interview. [The prosecutor] objected to the granting of a mistrial taking the position that the tape was favorable to the State and that the appropriate relief was simply not to permit the State to use the tape. Counsel had previously indicated to the Court that she did not intend to use any taped interviews. It is a point of interest that, on the morning of June 7, [the prosecutor] had originally indicated that the tape was favorable to the defendant. However, a short time later, in open court, she declared that the video tape was incriminating. Unfortunately, the first part of the discussion was off the record.

The defendant's request for a mistrial was granted. Defendant's Motion to Dismiss the Indictment With Prejudice was taken under advisement pending a hearing.

\*   \*   \*   \*   \*   \*

The [prosecuting attorney], however reprehensible her conduct may have

been, did nothing during this trial to goad the defendant into requesting a mistrial. She did everything in her power to prevent or to discourage the court from granting a mistrial. Nor was the decision to request such a mistrial forced or urged upon the defendant. The defendant was allowed to proceed and hear more evidence and was given until the next morning to decide if he wished to proceed. Moreover, the defendant was informed very candidly by the court that no matter what the circumstances, this Court was not inclined to dismiss this case. The defendant, under these circumstances, cannot be permitted to say that a retrial should be barred.

Slip op. at 7–9 (Aug. 1, 1990).

The Supreme Court addressed the double jeopardy issue before us in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Court stated:

> "The general rule is said to be that the double jeopardy clause does not bar reprosecution," ... where circumstances develop not attributable to prosecutorial or judicial overreaching, ... even if defendant's motion is necessitated by a prosecutorial error. However, retrial is barred where the error that prompted the mistrial is intended to provoke a mistrial or is 'motivated by bad faith or undertaken to harass or prejudice' the defendant.

*Id.* at 670, 102 S.Ct. at 2086 (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) and *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (citations and quotations omitted)).

The state court in *Kennedy* based its dismissal on double jeopardy grounds because of prosecutorial overreaching. *Id.* at 670, 102 S.Ct. at 2086. The prosecutor had asked a witness whether he had refused to do business with the defendant "because he is a crook?" *Id.* at 669, 102 S.Ct. at 2086. The Court discussed the rule set forth in *Dinitz*, and considered whether this generalized conduct amounted to " 'bad faith conduct' or 'harassment' on the

part of the judge or prosecutor." *Id.* at 674, 102 S.Ct. at 2088. The Supreme Court concluded:

> [T]he circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679, 102 S.Ct. at 2091.

Morrison argues that the prosecutor's actions were an attempt to gain a tactical advantage and to provoke Morrison into seeking a mistrial. Morrison argues that the prosecutor's overreaching, harassing, intentional, and bad faith conduct demonstrate that the prosecutor intended to provoke a mistrial.

Considering the record before the district court based on the state trial court findings, we have no doubt that the prosecutor's actions in this case constitute overreaching, harassing, intentional and bad faith conduct. These are factual findings binding upon us. The critical question, however, is whether the prosecutor's conduct was "intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679, 102 S.Ct. at 2091. The state trial court and the federal magistrate judge, as well as the district court, all carefully considered this question, and concluded the answer to be no. We are convinced that that conclusion is correct. As the state trial court found, once the videotape was discovered, the prosecutor argued against a mistrial and Morrison's defense counsel was advised that although a mistrial would be granted, the charges would not be dismissed.

We affirm the denial of the writ of habeas corpus.