Thomas Wayne Spears, the appellant, pleaded guilty and was convicted of manslaughter in connection with the 1987 death of his wife, Leslie Marie Spears. His sentence of ten years' imprisonment was "split" with one year to serve and five years' probation.
This case has a lengthy procedural history. The State appealed the circuit court's pretrial order granting a portion of the appellant's motion to suppress evidence found at the scene of the crime. State v. Spears, 560 So.2d 1145
(Ala.Cr.App. 1989), on return to remand, 570 So.2d 888
(Ala.Cr.App. 1990).
The appellant's first trial resulted in a mistrial when the prosecutor violated a "gag" order of the trial court. The appellant's case was called for trial on October 16, 1991. On that day the jury was struck, and the trial judge instructed the attorneys not to discuss the case with the media. *Page 16 
 "All right. Let the record reflect that the State's attorneys will not make any direct or indirect reference to the existence of a purported diary of anyone during . . . [in original] during opening statements, and the remainder of the motion in limine [to prevent any mention of the diary] will be taken up at a later time.[1]
 "One other thing is I'm going to instruct you gentlemen, just as I am these jurors, not to discuss — because I don't know how long this case will last — not to discuss this case during the trial with any member of the media, any newspaper reporter, or any reporter with any radio station." Mandamus/trial 85.[2]
On October 18, 1991, after ten witnesses had testified for the State, defense counsel requested a mistrial based on a newspaper article that appeared in The Mobile Press Register on October 17, 1991. Mandamus/trial R. 399. That article stated, in pertinent part:
 "[Clarke County district attorney Robert] Keahey said Thursday morning that Mrs. Spears had kept a diary found by police during their investigation. The diary, according to Keahey, makes several references to Mrs. Spears' thoughts and emotions about her husband right up to the time of the shooting." C.R. 491.[3]
The district attorney responded to the motion for mistrial by stating: "If this was [the trial judge's] instructions [for the attorneys not to discuss the case with any member of the media], I did not recall it. I remember [the trial judge] telling the jury." Mandamus/trial R. 399. At that time, the trial judge polled the jury and determined that no juror had heard or read any media account of the trial.
Mandamus/trial R. 401. In denying the motion for mistrial, the trial judge stated:
 "I have pending before me a motion for a mistrial by the attorneys for the defendant, for an allegation that the district attorney of the First Judicial Circuit violated specific orders of this Court, specifically, a gag order.
 "I find that the district attorney did violate that, and I want to say on the record that this is one of the most serious matters going to the integrity of this judicial circuit that this Court has ever been confronted with in almost — over 23 years of the practice of law.
 "However, I think that in ruling on the defendant's motion, the question becomes one of whether or not there is any potential prejudice to these proceedings. I do not find that in the questions I have asked the jury. I will state on the record: I do not know at this time what the proper sanctions are, but I'm going to proceed to see whether they are a contempt citation. If that's so, the district attorney will be cited for contempt. If it's a disciplinary by the Alabama State Bar, this Judge is going to forward a copy of these proceedings to the Alabama State Bar, and I guess I need to put in there: if there is any further violation, it will be a direct contempt of this Court's order, and I will immediately declare a mistrial on my own motion. Do you understand that, Mr. Robert Keahey? *Page 17 
 "MR. ROBERT D. KEAHEY: Yes, sir. I need to note that this morning, Ms. Clarke, the reporter from The Mobile Press [Register], I spoke briefly with her this morning. She asked me what the jury venire was composed of and I told her that I didn't have it before me and that I wasn't sure, that I didn't have it before me, and that it would be Monday or Tuesday before we got through."
 "THE COURT: That's the Court's ruling." Mandamus/trial R. 402-03.
After that, the State "join[ed] in with the defendant at this time and move[d] for a mistrial." Mandamus/trial R. 406.
 "MR. [RONNIE E.] KEAHEY [Assistant district attorney]: Judge, of course, the State of Alabama, and certainly as far as I'm concerned, and I feel like as far as Bobby [Robert D. Keahey] is concerned, I don't want any impropriety to go on, to prejudice anybody. I'm here for justice, honesty and fairness, and I'm going to do my job the best I can, as long as I do it, and in view of these circumstances that have been brought, it bothers me a great deal as far as the trial of this case is concerned, and the State is going to join in with the defendant at this time and move for a mistrial." Mandamus/trial R. 405-06.
In response the trial judge stated:
 "THE COURT: I'll say this on the record: I have known Mr. Ronnie Keahey for over twenty years as a practicing attorney, and I have said it in his presence and out of his presence: I have never had any question about his integrity or his professionalism as an attorney. I respect him highly. I have never known him to do anything as an attorney that I would consider to be improper. This trial has consumed a considerable amount of judicial time, also. I've got to determine whether there's any probable prejudice. That's my understanding at this point in the proceedings, and it may change from today, but I don't discern right now that there's any probable prejudice in this case, and we have been trying this case since Wednesday morning at 9:00, and I'm going to deny your motion for a mistrial, Mr. Keahey." Mandamus/trial R. 406.
Finding no prejudice to the jury, the trial judge denied both motions. Mandamus/trial R. 407.
Later, but also on October 18, 1991, defense counsel renewed his motion for a mistrial after a second article appeared in the newspaper. Mandamus/trial R. 525. A portion of the article appearing on the afternoon of October 18 states:
 "Keahey said that a diary found during the police investigation will be at the center of testimony. He said the diary makes several references to Mrs. Spears' thoughts and emotions about her husband right up to the time of the shooting. Defense attorneys have filed numerous motions to keep the diary's contents out of testimony, he said." C.R. 497.
In response to the renewed motion for a mistrial, the district attorney stated:
 "MR. ROBERT D. KEAHEY: Ronnie, you can tell them what we had Leita do. It was too late. As soon as it came up this morning, as soon as it was brought to my attention this morning, I had Ms. Pritchett call, in my presence, in front of Mr. Ronnie Keahey, and ask her [the newspaper reporter] to please remove anything that we had talked about, about this case. She said that it had already gone to press. She said she wasn't mentioning anything but whose testimony was taken, and that she was re-running something that was run yesterday and something she had dug up from an old news article. She said it couldn't be stopped, and I had already apprised the Court that she had called me this morning, and I talked to her about the venire and who had testified, and she asked me how was it going, or something like that, and I said we was just fumbling along, or something like that. I had previously brought this to the Court's attention earlier today." Mandamus/trial R. 526.
In response the trial judge made the following statement:
 "As I read this article, it quotes extensively from one of the participants in this case. I am just disgusted. I am absolutely disgusted. I've got more faith in that jury than I've got in some of the people in *Page 18 
this room, Mr. DuBose [defense counsel], and I've got faith that they are going to do what I say, and if I didn't, I'd declare a mistrial, Mr. Kimbrough, but I'm not going to declare a mistrial, and I want an exception shown to the Court's ruling by the attorneys for the defendant." Mandamus/trial R. 527.
Following this, there was a brief discussion of other matters and the jury was excused for the weekend.
At the beginning of court on Monday, October 21, 1991, the trial judge, Hardie B. Kimbrough, declared a mistrial with the following statement addressed to the jury and to the parties:
 "Prior to opening statements being made in this case on the afternoon of October 16th, 1991, a conference on-the-record was conducted in the law library outside of your presence. Those present were the defendant, Thomas Wayne Spears, his attorneys, Stuart C. DuBose and James E. Kimbrough, Jr., the District Attorney, Robert D. Keahey, and the Assistant District Attorney, Ronnie E. Keahey, the official court reporter, and me. As is reflected from the record, the Court stated at that time: 'One other thing is I'm going to instruct you gentlemen, just as I am these jurors, not to discuss — because I don't know how long this case will last — not to discuss this case during the trial with any member of the media, any newspaper reporter, or any reporter with any radio station.' This is sometimes referred to as a 'gag rule' or a 'gag order.'
 "Sometime later, on Friday morning, the attorneys for the defendant brought to the Court's attention that an article appeared in the Thursday, October 17th, 1991 Mobile Press, wherein proceedings of this case were reported and the source of the article was said to be the District Attorney, Robert D. Keahey.
 "The attorneys for the defendant moved for a mistrial on the grounds that the District Attorney had breached the 'gag rule' and had violated an order of this Court.
 "After some discussion the Assistant District Attorney, Ronnie E. Keahey, joined in the defendant's motion for a mistrial. At that time the Court denied the motion for a mistrial.
 "Later again on last Friday, out of your presence, that is, out of the presence of the jury, the attorneys for the defendant again made a motion for mistrial and made known to the Court that yet another newspaper report of the proceedings in this case appeared in the Friday, October 18th, 1991, edition of The Mobile Press.
Again, the news reporter related that her source was the District Attorney, Robert D. Keahey. Once again, and this was last Friday, this Court denied the motion for a mistrial.
 "Now, the Court has had the weekend to reflect upon these proceedings and to examine them in light of their possible consequences. One of the first considerations was whether or not the apparent breach of this Court's direct order has in any way influenced this jury. I have no reason to believe that it has. Next, consideration was given to whether this apparent violation of the Court's order had in any manner affected the attorneys in this case in so far as their adequately representing their respective clients. In my opinion, I think that there is a very distinct possibility that it has affected some, if not all, of the attorneys. To say, at the least, that it has been a distraction would be an understatement. Very likely, this apparently unwarranted behavior has caused each attorney to be less able to direct his undivided attention to this very serious case.
 "I do want to make it perfectly clear that attorneys Stuart C. DuBose, James E. Kimbrough, Jr., and Ronnie E. Keahey have conducted themselves properly in every aspect of this Court's 'gag order.' Whatever the reasoning or the motive of the District Attorney, Robert D. Keahey, in apparently violating this Court's order is not a matter to appropriately be taken up in this trial. However, the conduct of this official of the Court will be addressed in one or more subsequent proceedings; I assure you of that.
 "Now, I have had to examine my position in the trial of this case, in light of what *Page 19 
I have related to you. Above all, in every case it is my duty to remain neutral and impartial. I would be less than honest if I did not confess to you that I was very disturbed and upset by what has transpired. This causes me personal concern because I, too, am human. I am now concerned where my thoughts and my actions last week, that is, Friday, after these matters came to my attention, caused me not to be completely neutral and detached. Certainly, I tried to remain unaffected by these actions, but upon reflection I can't positively state that my rulings and demeanor might not have been affected by the apparent breach of my order by an officer of this Court, and that they might even be affected in any further proceedings in this case.
 "For you to try and understand my thoughts and emotions, I want you to consider that I do not ever recall such an incident happening in this circuit during the 23 years that I have been a member of the legal profession. In fact, I can't ever recall reading or hearing of it happening anywhere since I have been admitted to practice law. In every criminal case, not only the defendant but also the State of Alabama, is entitled to a fair and impartial trial. In this case, complete impartiality might reasonably be questioned. In other words, the appearance of impropriety must be avoided. For that reason, ladies and gentlemen, I do hereby declare a mistrial.
". . . .
 "Certainly, I believe in the freedom of the press. It is guaranteed in our constitution. But the proper forum for the trial of lawsuits is in the courtroom and not in the media. . . .
 "So, I beseech our officers of the court to try their cases in the proper forum — the courtroom — and to refrain from inflammatory remarks and utterances that would bias or prejudice an individual or party from receiving a fair and impartial trial by a jury of his or her peers.
". . . .
 "Because I will be involved in any proceedings brought against Robert D. Keahey for his alleged misconduct during the trial of this case, and in order to avoid the appearance of any impropriety, I do hereby disqualify and recuse myself from any further proceedings in this case and order that the Circuit Clerk assign this matter to another judge for final disposition." Mandamus/trial R. 538-544. (See also C.R. 422-428).
On March 26, 1992, the appellant filed a plea of former jeopardy in an attempt to prevent another trial. C.R. 449. In May of 1992, a jury trial was held in which "[t]he issue to be decided [was] whether, at defendant's previous trial which ended in a mistrial, the district attorney engaged in conduct which was intended to provoke the mistrial." C.R. 467. The issue was "whether the actions of Robert D. Keahey, in talking to the reporter from the Mobile Press newspaper, were designed or intended to goad or provoke Judge Kimbrough in causing a mistrial." Mandamus/jeopardy R. 48-49.
At the trial of the jeopardy issue, the appellant called one witness, Cathi Clark, the newspaper reporter. She testified that the district attorney had given her the information as she reported in her two articles. At the conclusion of her testimony, defense counsel announced, "That's the end of our presentation, your Honor." Mandamus/jeopardy R. 137. The prosecutor immediately moved for a directed verdict in favor of the State.
After hearing arguments from the attorneys, the trial court granted the State's motion for a directed verdict.
 "In making my ruling, I think it's clear the evidence is undisputed the District Attorney violated the gag order. It's clear from the record. I think it is a jury question whether he knowingly violated the gag order. The jury could reasonably conclude from the fact he was in the room with several other people who heard the judge make his ruling concerning a gag order that he did, in fact, hear the judge. And having so concluded, they could say that he knowingly violated the court's order.
 "That he intended to violate the court's order, I do not think that equates with *Page 20 
intentionally causing a mistrial. The fact he knowingly or intentionally entered on this course of conduct is not enough. There is a third — you have to go further [and] prove that he entered on this course of action for the purpose of, and with the intention of causing a mistrial. And I find this evidence utterly lacking.
 "For that reason I'm going to direct a verdict for the State." Mandamus/jeopardy R. 154.
After the circuit court rejected the appellant's jeopardy claim, the appellant sought relief before this court through a petition for writ of mandamus. In responding to this Court's request for an answer to the appellant's petition, the trial judge stated:
 "Oregon vs. Kennedy 456 U.S. 667, 72 L.Ed.2d 416, 102 S.Ct. 2083 [(1982),] establishes the rule that the circumstances under which a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. This type of case presents one of the rare survivals of the scintilla rule in Alabama evidence. Even a scintilla of evidence would have sent this to the Jury, but the trial court may have a specific finding that evidence as to intent was utterly lacking." C.R. 517 (emphasis in original).
This Court denied the petition without published opinion. See Ex parte Spears, 614 So.2d 1069 (Ala.Cr.App. 1992) (Table).
In Ex parte Spears, 621 So.2d 1255 (Ala. 1993), the Alabama Supreme Court also denied the mandamus petition. A majority of that court declined to address the merits of the petition and held that the appellant was not entitled to a writ of mandamus because he had an adequate remedy by appeal.
 "If Spears is retried and convicted for the offense stated in the indictment, he can appeal his conviction to the Court of Criminal Appeals and, if he is not satisfied with the judgment of that court, he can petition this Court for certiorari review pursuant to Rule 39, A.R.App.P. These remedies are adequate; therefore, a petition for a writ of mandamus is not an appropriate means of reviewing the trial judge's order in this case."
Spears, 621 So.2d at 1258.
The appellant's trial for the death of his wife commenced on August 30, 1993. After a jury had been selected but before the jury was sworn, the conditions of a plea agreement were discussed in open court outside of the presence of the jury. R. 134-160. During that discussion, in response to the prosecutor's statement that "if he appeals this conviction, we have the right to proceed on the original charge," (R. 139), defense counsel stated:
 "We ain't telling you we're going to appeal this thing, or we're not going to. But we're not going to sign a paper that says anything relative to this man's appeal rights. . . . [W]hat we're saying is is that we don't have any intention of appealing this. But you can't foreclose a client from his appellate rights." R. 143, 150.
After the jury was sworn and both parties announced ready for trial, the prosecutor announced that "[t]he State of Alabama and the Defendant, through his attorneys, have entered into a plea agreement in connection with this case." R. 161. Thereafter the appellant entered his plea of guilty without any mention of reserving any issue for appeal. R. 162-178. The written plea agreement contains no mention of reserving any issue for appeal and contains no mention of an appeal. C.R. 602-03. Nowhere in the record is there any indication that in pleading guilty the appellant wished to reserve any issue for appeal.
 I
Although the appellant pleaded guilty without specifically reserving the right to appeal the issue of jeopardy, the right to argue that issue on appeal has not been waived.
The general rule is:
 "It is clear that by pleading guilty, a defendant waives all nonjurisdictional defects occurring before the plea. See, e.g., Martin v. State, 579 So.2d 69, 70 (Ala.Cr.App. 1991). Because 'a guilty plea represents *Page 21 
a break in the chain of events which has preceded it in the criminal process,' Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), we have required a defendant who wishes to appeal an adverse ruling on an issue raised prior to the entry of the plea to inform the trial court, at the time he enters his plea, that he intends to reserve that issue for appeal. See Sawyer v. State, 456 So.2d 110 (Ala.Cr.App. 1982), reversed after record supplemented, 456 So.2d 112
(Ala. 1983). The defendant's plea is, in effect, conditioned on his right to appeal the prior adverse ruling. See 2 W. LaFave J. Israel, Criminal Procedure, § 20.6(b) (1984). Recently, Justice Maddox summarized the Alabama law on this point as follows:
 " 'Ordinarily, a guilty plea waives all nonjurisdictional matters, including a trial court's refusal to suppress evidence, but this Court has, by case law, permitted an exception to that general rule when a defendant specifically reserves his or her right to appeal such a ruling on a motion to suppress, as this petitioner did. Ex parte Sawyer, 456 So.2d 112
(Ala. 1983) (defendant allowed to supplement record on appeal to show that search and seizure issue was reserved when the plea of guilty was entered).'
 "Ex parte Hergott, 588 So.2d 911, 916 (Ala. 1991) (Maddox, J., dissenting) (emphasis in original).
 "As Justice Maddox's parenthetical explanation of Sawyer indicates, a defendant must reserve his right to appeal an adverse ruling on a issue arising before the plea 'when the plea of guilty [is] entered.' The reason behind such a requirement is clear: because a guilty plea waives all nonjurisdictional defects in proceedings occurring before the plea, Martin, supra, and 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process,' Tollett, supra, an unconditional plea must be taken to represent the defendant's decision to forego any challenge to events occurring before the plea. If the defendant does not intend to forego such challenges, he must make that intent clear before he enters his plea."
Prim v. State, 616 So.2d 381, 382-83 (Ala.Cr.App. 1993).
However, in connection with the waiver of the constitutional right against double jeopardy, the rule is:
 "A guilty plea does not necessarily waive the right to claim a violation of the guarantee against double jeopardy. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). '[A] plea of guilty to a charge does not waive a claim that — judged on its face — the charge is one which the State may not constitutionally prosecute.' Menna v. New York, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975)."
Dansby v. State, 602 So.2d 910 (Ala.Cr.App. 1992). See Myers v.State, 499 So.2d 820 (Ala.Cr.App. 1986); Barnes v. State,354 So.2d 343 (Ala.Cr.App. 1978). See also Taylor v. Whitley,933 F.2d 325, 330 (5th Cir. 1991) ("A defendant who enters a guilty plea despite indictments or a trial court record that evince on their face a double jeopardy violation must expressly relinquish his rights against double jeopardy; otherwise, he has not waived his right to challenge the double jeopardy violation. We conclude, however, that the 'deliberate relinquishment' requirement does not apply to double jeopardy violations that are not apparent on the face of the indictments or trial court record at the time the defendant enters his plea."), cert. denied, ___ U.S. ___, 112 S.Ct. 1678,118 L.Ed.2d 395 (1992). See generally 2 W. LaFave J. Israel,Criminal Procedure § 20.6 (1984).
 II
Principles of jeopardy did not bar the appellant's second trial because the appellant failed to present evidence at the jury trial on the jeopardy issue that the district attorney intended to cause a mistrial.
 "The double jeopardy clause forbids the government to try a person twice for the same crime. If after a criminal trial begins the government decides that the case is going badly for it, it cannot dismiss the case and reprosecute the defendant. Nor is it permitted to achieve by indirection *Page 22 
what it is not permitted to do directly; and thus it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant. Oregon v. Kennedy, 456 U.S. 667, 676, 679, 102 S.Ct. 2083, 2091-92, 72 L.Ed.2d 416 (1982). The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. Id. at 674-76, 102 S.Ct. at 208890; Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1972); United States v. Powell, 982 F.2d 1422, 1429 (10th Cir. 1992); United States v. Perez Sanchez, 806 F.2d 7
(1st Cir. 1986). Yet the blunder will almost always be intentional — the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. Oregon v. Kennedy, supra, 456 U.S. at 675-76, 102 S.Ct. at 2089-90. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means."
United States v. Oseni, 996 F.2d 186, 187-88 (7th Cir. 1993). See also United States v. Pavloyianis, 996 F.2d 1467, 1474 (2d Cir. 1993) (the Double Jeopardy Clause protects a defendant from retrial in those circumstances where " 'the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct" ').
 "Even without manifest necessity, the Double Jeopardy Clause usually does not bar retrial when the mistrial results from a motion by the defense. In United States v. Dinitz, [424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976),] the Court held that a mistrial granted at the request of the defendant does not preclude retrial, except when the government has acted in bad faith. The Court subsequently narrowed this exception to circumstances where the prosecutor or judge engages in conduct intended to 'goad' the defendant into moving for a mistrial. [Oregon v. Kennedy, 456 U.S. 667, 674-76, 102 S.Ct. 2083, 208889, 72 L.Ed.2d 416
(1982).] The Double Jeopardy Clause does not bar retrial when the prosecution engages in bad faith conduct for other reasons. When the court declares a mistrial sua sponte after a defendant withdraws her motion for a mistrial, retrial is barred absent manifest necessity."
Project, Twenty-Second Annual Review of Criminal Procedure:United States Supreme Court and Courts of Appeals 1991-1992, 81 Geo.L.J. 853, 1225-26 (1993) (footnotes omitted).
"Reprosecution is not barred by merely 'grossly negligent' conduct." Cochran v. State, 500 So.2d 1161, 1166 (Ala.Cr.App. 1984), affirmed as to this issue, reversed on other grounds,500 So.2d 1179, 1182 (Ala. 1985) (prosecutor's failure to inform defendant that one of state's witnesses had been undergoing psychological treatment was not conduct intended to provoke defendant into moving for a mistrial).
 "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."
Oregon v. Kennedy, 456 U.S. at 675-76, 102 S.Ct. at 2089. SeeRobinson v. State, 405 So.2d 1328, 1332 (Ala.Cr.App.) ("we hold that there was no double jeopardy impediment to appellant's retrial on the basis of the prosecution's alleged knowing use of perjured testimony at the first trial"), cert. denied,405 So.2d 1334 (Ala. 1981); Scarbrough v. State, *Page 23 528 So.2d 890, 893 (Ala.Cr.App. 1988) (no jeopardy where mistrial resulted from exhibition of defendant before jury in shackles and prison clothes where there was no evidence of any prosecutorial misconduct causing the mistrial). Even where the prosecutor's actions constitute "overreaching, harassing, intentional and bad faith conduct," a mistrial based on that conduct will not bar a retrial unless "the prosecutor's conduct was 'intended to provoke the defendant into moving for a mistrial.' " Morrison v. Missouri,946 F.2d 1340, 1343 (8th Cir. 1991) (jeopardy no bar to retrial when mistrial was granted as result of prosecutor's fraudulent affidavit because prosecutor's bad-faith conduct was intended to win tactical advantage, not provoke mistrial), cert. denied, ___ U.S. ___, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). See alsoGreyson v. Kellam, 937 F.2d 1409, 1415 (9th Cir. 1991) (jeopardy no bar to retrial where prosecutor's reference to testimony of witness whom prosecutor knew would not testify showed prosecutor overzealous in desire to convict, but there was no evidence that prosecutor intended to goad defendant into moving for mistrial).
 III
The trial judge's granting the State's motion for a directed verdict on the issue of jeopardy was legally correct.
At the trial of the jeopardy issue, the appellant presented the testimony of only one witness — the newspaper reporter. The substance of her testimony was that the district attorney had in fact given her the information she reported receiving from him in her two newspaper articles. The appellant proved that the district attorney violated the "gag order" of the trial court, but did not present any evidence that the district attorney, in talking to the reporter, intended to cause a mistrial.
We deem it significant that the jury was not prejudiced by the actions of the district attorney because it appears that the jurors never read either newspaper article. Mandamus/jeopardy R. 26 ("THE COURT: I think everybody concedes prejudice to the jury is out. They polled the jury."). See Mandamus/trial R. 401.
In Brannon v. State, 549 So.2d 532, 536 (Ala.Cr.App. 1989), this Court held that the defendant had not proven that the prosecutor's actions in attempting to introduce into evidence part of a statement made by the defendant "were intended to provoke appellant into moving for a mistrial."
 "The prosecutor's attempts to introduce the statement, or some of the contents of it, were prejudicial to appellant. This is insufficient to show intent, because '[e]very act on the part of a rational prosecutor during a trial is designed to "prejudice" the defendant by placing before the judge or jury evidence leading to a finding of his guilt.' [United States v. Dinitz, 424 U.S. 600, 674, 96 S.Ct. 1075, 2088, 47 L.Ed.2d 267
(1976)]."
Brannon, 549 So.2d at 536.
 "When reviewing a summary judgment or a directed verdict, the applicable standard of review on appeal is the same standard used by the trial court in granting or denying the motion initially. Bussey v. John Deere Co., 531 So.2d 860, 862, 863 (Ala. 1988); Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). . . . For a directed verdict, we must 'determine whether there was sufficient evidence to produce a conflict warranting jury consideration.' Ogle v. Long, 551 So.2d 914, 915
(Ala. 1989); Bussey, 531 So.2d at 863. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant. Ogle, 551 So.2d at 915; Bussey, 531 So.2d at 863; Wilson, 496 So.2d at 758; Harrell [v. Reynolds Metals Co.], 495 So.2d [1381, 1383 (Ala. 1986)]; see also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990); Dunklin v. Winn-Dixie of Montgomery, Inc., 595 So.2d 463, 464 (Ala. 1992)."
Joe Cooper Assoc., Inc. v. Central Life Assurance Company,614 So.2d 982, 986 (Ala. 1992).
 "[A] directed verdict . . . is proper when the party with the burden of presenting evidence has failed to present 'substantial evidence' in support of its position. § 12-21-12(a), (c), Ala. Code 1975, John R. Cowley *Page 24 Bros., [Inc. v. Brown, 569 So.2d 375 (Ala. 1990)]. 'Substantial evidence' is 'evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Med Plus Properties v. Colcock Constr. Group, Inc.,628 So.2d 370, 373-74 (Ala. 1993).
Here, the appellant has simply failed to carry his burden of proof on this issue. " 'Since a plea of former jeopardy sets up affirmative matter . . ., the burden of proving this issue, from the start, is on the defendant. . . .' 30 Am.Jur.2d Evidence § 1160 (1967)." Morris v. State,465 So.2d 1173, 1177 (Ala.Cr.App. 1984), reversed on other grounds,465 So.2d 1180 (Ala. 1985). See also Story v. State,435 So.2d 1360, 1364 (Ala.Cr.App. 1982) ("Where the issue presented by the plea is a question of law only, however, there is no need to submit that issue to a jury. . . . Therefore, where a plea of former jeopardy presents on its face only questions of law, a hearing is not required."), reversed on other grounds,435 So.2d 1365 (Ala. 1983).
 "The plea of former jeopardy based on the granting of a mistrial may present a factual issue where the facts out of which the legal necessity arose are disputed. Thus under certain conditions, the accused is entitled to determination by the jury of an issue of whether the court improperly or prematurely discharged the jury. Yantis v. State, 95 Tex.Crim. R., 255 S.W. 180 (1923); State v. Thompson, 58 Utah 291, 199 P. 161 (1921); Chadwick v. State, 86 Tex.Crim. 269, 216 S.W. 397 (1919). Yet, even where the issue is submitted to a jury, the court may charge the jury that the plea is not sustained by the proof when that is a fact, and where the facts are not controverted the court has the authority to direct a verdict for or against the state as the case may require. Brown v. State, 209 Ala. 490, 96 So. 475
(1923); Parsons v. State, 179 Ala. 23, 60 So. 864
(1913); Blevins v. State, 20 Ala. App. 229, 101 So. 478, cert. denied, 211 Ala. 615, 101 So. 482
(1924)."
Billups v. City of Birmingham, 367 So.2d 518, 522 (Ala.Cr.App. 1978), cert. quashed, 367 So.2d 524 (Ala. 1979).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Although the trial judge never expressly ruled that the diary was inadmissible in evidence, he repeatedly withheld his ruling on its admissibility and expressed his opinion that, unless he could be convinced otherwise, the diary was not admissible. See Mandamus/trial R. 85, 87, 89, 91, 166, 171. In his last ruling before the matter of the mistrial, the trial judge stated:
 "Well, I'll tell you what we're going to do, fellows. We're going to proceed along, without any mention of this diary, and every witness that's got anything to do with this, we are going to have them remain, or, if I rule that it's not admissible, I will give the State an opportunity to show if any part thereof is admissible, and that will not shorten this matter, but that's the way we're going to proceed.
 "I'm telling [them] not to talk about the diary." Mandamus/trial R. 192.
[2] For a better understanding of this case, this Court has elected to take judicial notice of the record filed in the mandamus proceedings involving this same matter. See Ex parteSpears, CR-91-2004. That record contains a transcript of the appellant's first trial, which resulted in the mistrial, and a transcript of the jeopardy trial held on May 11, 1992. References to the record in the mandamus proceeding will appear as "Mandamus/trial R. ___" or "Mandamus/jeopardy R. ___" with the appropriate page number.
[3] The reference, "C.R. ___" is to the clerk's record in the present appeal (CR 93-0027).